Tatiana DRAGANOVA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 95–2634.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1996.

Decided April 26, 1996.

Donald B. Kempster, Martina M. Keller (argued), Kempster & Lenz-Calvo, Chicago, IL, for petitioner.

Joan E. Smiley, Janet Reno, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, DC, Samuel Der-Yeghiayan, I.N.S., Chicago, IL, James B. Burns, Office of the U.S. Atty., Chicago, IL, William J. Howard, David M. McConnell, Washington, DC, Marion E. Guyton, Susie Cho (argued), Dept. of Justice, Civil Div., Immigration Litigation, Washington, DC, for respondent I.N.S.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Tatiana Draganova petitions for review of an order by the Board of Immigration Appeals (BIA), which dismissed her appeal of a decision denying asylum and withholding of deportation. Draganova is a Bulgarian citizen who entered the United States in 1989 as a nonimmigrant visitor for pleasure, autho-

rized to remain until March 2, 1990. The INS issued an order to show cause on April 28, 1993, placing Draganova under deportation proceedings on the ground that she had stayed beyond the time permitted by her visa. At a deportation hearing, Draganova, through counsel, conceded deportability. Because Draganova's counsel declined to designate a country of deportation, the Immigration Judge (IJ) designated Bulgaria. Draganova submitted an application for asylum, with supporting documents and an affidavit. The asylum hearing was held on August 25, 1994. In a decision the same day, the IJ rejected Draganova's claims of past persecution and a well-founded fear of future persecution, denied asylum and withholding of deportation, and granted voluntary departure. The BIA in an order issued on June 12, 1995, affirmed the decision of the IJ. Draganova timely petitioned for review by our court. We vacate the BIA's order and remand for further proceedings.

## I. Background

### A. Facts Found by the Immigration Judge and the Board of Immigration Appeals

For purposes of this order, we believe it is necessary only to set out the facts as they were found by the IJ and the BIA,[1] although Draganova did present further evidence in her application and testimony.[2] Draganova, a 29 year-old woman, is a native and citizen of Bulgaria. According to her application, her grandfather had been a wealthy landowner, but following the takeover by the Communists after World War II, he encountered problems with the government's efforts at collectivization of private lands. He was later found dead under mysterious circumstances, and when Draganova's father expressed disapproval with the investigation report, he was warned to refrain from criticism. Accordingly, Draganova's father moved to Sofia. He was subsequently ex-

---

1. The BIA appears to have found the same facts as the IJ, since the BIA adopted the IJ's "analysis and conclusions."

2. On remand, the BIA is not limited to the facts as found in its order and in the IJ's decision, or as described in our order, but may also consider

the other evidence that has been presented by Draganova and by the I.N.S. We mean to express no opinion as to whether the IJ or the BIA correctly found or accurately described any given fact or set of facts.

pelled without cause from the University, and obtained employment as a bus driver.

Draganova testified that in 1965, her father was taken for interrogation as to his political activities, and held for approximately one year, during which time Draganova was born. After his release, he continued to be called in for questioning on a regular basis.

In 1973, Draganova's aunt, her father's sister, fled Bulgaria to Vienna, where she was issued a refugee visa to enter the United States. In October of that same year, Draganova's father was again taken from the home for questioning about his sister. Later that month, he was rearrested, then exiled to a labor camp in his birthplace, the small village of Selanovzy. Draganova stated that her family did not hear from her father for approximately one year, and that they were denied legal permission to join him. Thereafter, they were allowed to visit him five to six times a year, and he was only given special permission to visit them in Sofia three or four times annually.

Draganova stated that in the summer of 1978, her father informed her that he would be rejoining them soon. However, shortly thereafter, the family received a telegram from a friend (Rusin) stating that Draganova's father had been killed. When her mother inquired into the circumstances surrounding his death, she was told that it had been caused by his negligence in a work-related accident. However, Rusin told Draganova's mother that the circumstances were more ominous, in that her father had been assigned to transport large stones to a flooded river area (which was beyond his normal work experience and capacities). Draganova and her family thus believed that his death was not accidental. Further attempts by Draganova's mother to delve into these circumstances by obtaining a lawyer, however, were fruitless.

Draganova stated that in 1980, she enrolled in high school. She stated that on one occasion, she was removed from class and taken to the police station, for interrogation about her family, including her aunt. She also stated that she was warned to be careful in the future. Draganova testified that these interrogations were conducted annually, and

that they caused her to be somewhat ostracized by her teachers and classmates.

According to Draganova's application, she graduated high school in 1983, but was unable to gain admission to the University, which she believes was due to her family's background. Thereafter, she went to work at an electronics factory in Sofia.

In 1986, Draganova's brother was severely injured. Draganova testified that one night the family received a telephone call from the hospital, informing them that Draganova's brother had been beaten into unconsciousness. They subsequently learned from witnesses that after leaving a bar, he had been involved in a fight with three men who carried police night sticks. Draganova's mother was again discouraged from making further inquiries, which again aroused their suspicions. Draganova also testified that her brother, who as a result of his beating is presently disabled, was denied disability payments, because his injuries were alleged to have been his fault.

In 1988, Draganova was approached on several occasions by her supervisor at the factory, and asked to join the Communist party. Draganova also testified that her supervisor made sexual advances at her, but that she nonetheless eventually refused to join the Communist party. Consequently, Draganova was denied raises and promotions. Thus, in 1989 she obtained a passport and visa to visit the United States.

Although Draganova concedes that Bulgaria has undergone some political changes, she believes that these changes are essentially cosmetic, that the Communist party still exerts predominant authority, and that her family background, and her own prior experiences, place her at risk if she were to return. She also stated that in 1994, her mother received two summonses requiring Draganova's attendance at the police station.

## B. Decisions of the Immigration Judge and the Board of Immigration Appeals

In his decision, the IJ first concluded that Draganova had not shown past persecution. The IJ began by stating that generally harsh

conditions shared by many other persons did not amount to persecution. The IJ found that Draganova herself was never arrested or convicted, or subject to mistreatment on account of one or more of the statutorily enumerated grounds. The IJ also noted that, despite her family's past experiences and averred reputation, Draganova was asked to join the Communist party. According to the IJ, Draganova did not appear to suffer markedly unusual consequences from her refusal to join the party. Finally, the IJ pointed out that Draganova was issued a passport in July 1989, even before the end of Todor Zhivkov's Communist dictatorship.

The IJ then concluded that Draganova had not established a well-founded fear of persecution, for four reasons. Two of the reasons relate to her lack of evidence regarding current country conditions and regarding the motivation for the recent summonses allegedly issued to her by the Bulgarian police. The other two reasons are worth quoting:

> Although the circumstances surrounding her father's purportedly accidental death in 1978 contained inferences of more sinister causes, there is *insufficient evidence to conclusively determine* that it was attributable to government inspired actions against him. [Emphasis added.]

> Similarly, while the Respondent's brother's beating in 1986 may have been caused by his having become embroiled in a dispute with a policeman, perhaps over politics, there is *insufficient evidence to conclusively determine* that it was brought about for any reason that was, or could be, connected to the Respondent [Draganova]. [Emphasis added.]

The IJ denied both asylum and withholding of deportation. Citing the humanitarian considerations indicated by the report of an American psychologist who met with Draganova several times, the IJ granted voluntary departure.

The BIA dismissed Draganova's appeal of the IJ's decision. The BIA stated its agreement with the IJ that Draganova had not established past persecution or a well-founded fear of persecution on account of the five grounds enumerated in 8 U.S.C.

§ 1101(a)(42), and "adopt[ed] the [IJ's] analysis and conclusions." According to the BIA:

> The respondent claims that she will be persecuted and harmed by the Bulgarian government and she cites the mistreatment of her father and her brother whom she asserts the government physically abused. It is well-established however that the testimony of the respondent must be believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for her fear in order to establish a well-founded fear of persecution or a claim of past persecution. [Citation omitted.] As the [IJ] properly found, the respondent has not provided a sufficiently detailed account of the events concerning her father and brother to demonstrate that the government mistreated them or, if so, that the motivation for such mistreatment was within the scope of section 208(a) of the Act [8 U.S.C. § 1158(a) ]. The [IJ] properly concluded that the respondent has not provided a sufficiently coherent or detailed account to establish the motivation for her alleged mistreatment. Furthermore, as the [IJ] properly found, the alleged mistreatment encountered by the respondent was not so severe as to constitute persecution rather than mere harassment or discrimination. [Citations omitted.] The [IJ] also properly found that the respondent had not established past persecution and also that, even if such showing had been made, there is no reasonable likelihood of present persecution or that there are humanitarian or compelling bases that presently warrant a grant of asylum. [Citation omitted.]

## II. Analysis

In her opening appellate brief, Draganova explicitly waives any challenge to the conclusion that she did not have a well-founded fear of persecution. The main issue in Draganova's petition for review is whether she established a claim of past persecution.

As set out in *Urukov v. I.N.S.*, 55 F.3d 222 (7th Cir.1995), the Attorney General may grant or deny asylum as follows:

> The Attorney General has discretion to grant asylum to 'refugees,' 8 U.S.C.

§ 1158(a). 'Refugees' are defined as people who are unwilling to return to their native countries 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.' 8 U.S.C. § 1101(a)(42)(A). While the [Immigration and Nationality] Act does not define 'persecution,' this court has defined it as 'punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate.' *DeSouza v. I.N.S.*, 999 F.2d 1156, 1158 (7th Cir.1993) (citation omitted); *see also Balazoski v. I.N.S.*, 932 F.2d 638, 642 (7th Cir.1991) (definition of persecution includes at minimum, conduct that threatens life or freedom).

*Urukov*, 55 F.3d at 227.

 While we review the BIA's determination whether a person is a "refugee" under the substantial evidence test (a deferential standard), we review the BIA's conclusions of law and its interpretation of the Act *de novo*. *Id.* (citing *Kaczmarczyk v. I.N.S.*, 933 F.2d 588, 593 (7th Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991)). "We will, however, defer to the BIA's interpretation of the Act if the intent of Congress with respect to the matter at issue is not clear and if the interpretation offered by the BIA is reasonable." *Borca v. I.N.S.*, 77 F.3d 210, 214 (7th Cir.1996) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)). We also review the BIA's decision to determine whether "it has heard and thought and not merely reacted" to the IJ's decision. *Guentchev v. I.N.S.*, 77 F.3d 1036, 1038 (7th Cir.1996) (quoting *Vergara–Molina v. I.N.S.*, 956 F.2d 682, 685 (7th Cir.1992) (citation omitted)). As both sides agree, "the Board fulfils its duty by summarily affirming an immigration judge's opinion." *Id.* (citations omitted). Yet, of course, the BIA's adoption of a flawed decision by an IJ, or a flawed explanation by the BIA of the reasons for adoption, may lead us to conclude that the BIA's decision is insufficient. *See Man v. I.N.S.*, 69 F.3d 835, 837 (7th Cir.1995) ("We will uphold the BIA's denial of such application

'unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis' ") (quoting *Cordoba–Chaves v. I.N.S.*, 946 F.2d 1244, 1246 (7th Cir.1991)); *cf. Kubon v. I.N.S.*, 913 F.2d 386, 387 (7th Cir.1990) (citations omitted).

The IJ indicated that the evidence of mistreatment of her father and her brother was relevant only to Draganova's claim of a well-founded fear of persecution. The BIA, while it adopted the IJ's "analysis and conclusions," also treated the evidence of mistreatment of her father and her brother as relevant *both* to the claim of well-founded fear of persecution *and* to the claim of past persecution. It then stated that the IJ had "properly found" that Draganova "has not provided a sufficiently detailed account" to demonstrate either that the government mistreated her father and brother, or why the government did so. However, the IJ did not say that Draganova did not "provide a sufficiently detailed account." Instead, the IJ stated in considering the father's situation, and then again in considering the brother's situation, that "there is insufficient evidence to *conclusively determine*" the motivation for their mistreatment. We believe that the IJ's consideration of these issues was not "proper." Since the BIA failed to correct the IJ's improper analysis, and applied the IJ's analysis in rejecting Draganova's past persecution claim, we must remand.

 We first note that, contrary to the IJ's statement, the evidence presented need not *conclusively* prove that an applicant has a well-founded fear of persecution. *See I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). More important for our purposes, the evidence presented need not *conclusively* prove that the applicant suffered past persecution. The applicant need only "present specific facts establishing that he or she has actually been the victim of persecution ... on account of race, religion, nationality, membership in a particular social group, or political opinion." *Carvajal–Munoz v. I.N.S.*, 743 F.2d 562, 574 (7th Cir.1984) (emphasis omitted). These specific facts are sufficient if they "give rise

to an inference that the applicant has been ... singled out for persecution on one of the specified grounds." *Id.*

█ To make a claim for withholding of deportation under 8 U.S.C. § 1253(h)—i.e., for a showing that "life or freedom would be threatened"—the applicant must demonstrate that "it is more likely than not that [she] would be subject to persecution on one of the specified grounds." *I.N.S. v. Stevic,* 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). Even for a claim of withholding of deportation, then, conclusiveness is too high a burden of proof. We see no reason to set a greater burden of proof— such as conclusive proof—for a claim of past persecution than for a claim that persecution would occur in the future. In fact, our court has stated in dictum that a higher standard of proof applies to a showing of withholding of deportation than to a showing of past persecution. *Khano v. I.N.S.,* 999 F.2d 1203, 1209 (7th Cir.1993); *Rhoa–Zamora v. I.N.S.,* 971 F.2d 26, 29 (7th Cir.1992), *cert. denied sub nom. Esquivel–Berrios v. I.N.S.,* 507 U.S. 1050, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993), and *cert. denied,* 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); *Carvajal–Munoz,* 743 F.2d at 574–75. Assigning a greater burden of proof to a claim for withholding of deportation than to a claim of past persecution would seem to make sense, in light of the Supreme Court's recognition that the Immigration and Nationality Act established "a broad class of refugees who are eligible for a discretionary grant of asylum, and a narrower class of aliens who are given a statutory right not to be deported to the country where they are in danger." *Cardoza–Fonseca,* 480 U.S. at 424, 107 S.Ct. at 1209; *see also Osorio v. I.N.S.,* 18 F.3d 1017, 1021 (2d Cir.1994). Of course, *Cardoza–Fonseca* was concerned mainly with the subset of the "broad class" defined by a well-founded fear of persecution, not with the other subset defined by past persecution. *See generally Cardoza–Fonseca, supra.*

In any event, we need not definitively decide the precise burden of proof in order to hold that the BIA was incorrect in adopting the IJ's use of "conclusive" evidence to prove past persecution. On remand, the BIA may apply the standard set forth in *Carvajal–Munoz, supra.* It may also adopt a different approach in its discretion, so long as that approach is consistent with the statute. *Borca v. I.N.S.,* 77 F.3d 210, 216–17 (7th Cir. 1996) (citing *I.N.S. v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981)).

The impact of the IJ's error in describing the burden of proof will end up being harmless, though, if persecution of family members is determined irrelevant or insufficiently significant in showing persecution of Draganova. The BIA's decision indicated that it did think persecution of family members was relevant to a showing of persecution of Draganova, but it did not explain why, or in what ways, it was relevant. A previous BIA decision, *In re Chen,* Int. Dec. No. 3104, 1989 WL 331860 (BIA 1989), supports the proposition that persecution of the family is relevant; in *Chen,* the persecution of the applicant's father bolstered the applicant's claims of past persecution. *See id.* Draganova also asks our court to consider the concurrence in *Kahssai v. I.N.S.,* 16 F.3d 323, 325–30 (9th Cir.1994) (Reinhardt, J., concurring), construing it as saying that past persecution of family members can support a claim of past persecution for the applicant, even if the applicant was not persecuted herself. However, we interpret the concurrence in *Kahssai* as indicating no more than the relevance of the family's past persecution to the applicant's fear of future persecution, or to grounds that favor a grant of asylum when past persecution has been proved. *See id.* at 328–29. We have not located or been presented with authority beyond *Chen* for Draganova's argument (and the BIA's apparent belief in this case) that past persecution of the family may be a basis for showing past persecution of the applicant; however, we have not located or been presented with authority to the contrary, either.[3] We will allow the parties to develop their arguments

---

3. We do not mean to suggest, though, that authority on one side or the other of this issue does

not exist.

on this issue on remand, and allow the BIA to consider and explain its views further, if the BIA deems the issue relevant to its decision.

We note also for purposes of our remand that even if Draganova has successfully shown past persecution, she will not necessarily merit asylum. "Past persecution creates a presumption in favor of granting asylum, but the presumption is rebuttable; among other factors admissible in rebuttal is a demonstration that ... the alien is not in danger of being persecuted again." *Skalak v. I.N.S.*, 944 F.2d 364, 365 (7th Cir.1991) (citing *In re Chen*, Int. Dec. No. 3104, 1989 WL 331860 (BIA 1989)); *see also* 8 C.F.R. § 208.13(b)(1)(i), (ii).

Finally, we note that if the BIA finds that Draganova is a refugee, but denies asylum in its discretion, it must also consider whether Draganova must be granted withholding of deportation. *See Osorio*, 18 F.3d at 1032 (citing *Cardoza–Fonseca*, 480 U.S. at 443–45, 107 S.Ct. at 1219–20).

### III. Conclusion

We GRANT the petition for review, VACATE the order of the Board of Immigration Appeals, and REMAND for proceedings consistent with this opinion.