**Julia KUHAI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 99–1488.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1999.

Decided Dec. 9, 1999.

---

Scott D. Pollock (argued), Pollock & Associates, Chicago, IL, for Petitioner.

Janet Reno, United States Attorney, Office of the United States Attorney General, Washington, DC, Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, Regina Byrd (argued), Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Julia Kuhai, an ethnic Ukrainian and citizen of Uzbekistan, appeals the denial of her petition for asylum by the Board of Immigration Appeals ("Board"). She claims that the Board erred by determining that she was a citizen of Ukraine and ordering her to be deported there without allowing her to brief the issue. Because we agree that Kuhai deserves an opportunity to brief the question whether she is a citizen of Ukraine, we remand the case for further proceedings.

## I. History

Julia Kuhai is a forty-nine-year-old citizen of Uzbekistan. She was born, however, in Cherkasi, a town of the then Soviet Union. Now, Cherkasi is encompassed by Ukraine, and her mother and sister still reside there. At age seventeen, Kuhai left Cherkasi to assist victims of an earthquake

in Tashkent, then the capital of the Soviet Republic of Uzbekistan. She remained in Tashkent, married and had a child. Kuhai later divorced her husband, a Polish national and Uzbek citizen.

In 1991, Uzbekistan became an independent state, and Kuhai, a permanent resident since 1967, became a citizen of the new nation. The new regime officially favored the indigenous Uzbek and Tajik populations. Non–Muslim Slavs, such as Kuhai, lost their jobs, were treated in a hostile manner and were often threatened with physical harm. In 1991, Kuhai was fired from her job as a crane operator because she was a Russian-speaking person. She was unable to attend her Russian Orthodox church, she lost her apartment and her neighbors told her to leave the country.

In December 1992, Kuhai left Uzbekistan. She first visited St. Petersburg, Russia, then ten days after she departed Uzbekistan, entered the United States as a visitor. On October 1, 1993, she filed an application for asylum on the basis of her social group. In her application, Kuhai claimed that she had suffered past persecution in Uzbekistan and that she feared that her "freedom would be threatened" if she was forced to return. She also stated that she left Ukraine when she was young, and she "lost her citizenship rights" in Ukraine.

On February 24, 1994, her application was denied by the Immigration and Naturalization Service ("INS"). On March 18, 1994, INS issued an Order to Show Cause as to why Kuhai should not be deported for remaining in the United States beyond her visitor allowance. At a hearing on July 22, 1994, Kuhai conceded deportability but declined to designate a country for deportation. The immigration judge designated Uzbekistan as the country where she would be deported if deportation became necessary.

On August 4, 1994, Kuhai reapplied for political asylum, again claiming both past persecution and a well-founded fear of persecution. In January 1995, she had a hearing on the merits of her case. The immigration judge denied Kuhai's application and provided three reasons for his denial. First, Kuhai's treatment in Uzbekistan, while unfair, did not amount to persecution within the meaning of § 1101(a)(42) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §§ 1101 *et seq.* Second, Kuhai was free to return to Ukraine because she was born in that country. Third, her reason for not wanting to return to Ukraine was that "she had a better job in Uzbekistan and apartment there and would not be able to obtain a job or similar apartment in the Ukraine." As such, Kuhai did not establish her eligibility for asylum or meet the standard for withholding of deportation. The immigration judge granted Kuhai's request for voluntary departure and designated Uzbekistan as the country for deportation if Kuhai failed to self-deport.

On January 17, 1995, Kuhai appealed the immigration judge's decision to the Board. In her brief to the Board, she argued that the immigration judge failed to consider whether Kuhai held a well-founded fear of future persecution if she were forced to return to Uzbekistan. In February 1999, the Board issued a final order adopting and affirming the immigration judge's decision. However, the Board chose to modify the country of deportation designated by the immigration judge from Uzbekistan to Ukraine, based upon an advisory opinion given by the State Department that Kuhai should have Ukrainian citizenship. The Board did not address Kuhai's fear of future persecution in Uzbekistan, because it noted that, as a Ukrainian citizen, she could return to Ukraine. As such, Kuhai was not a refugee from a country in which she had citizenship.

## II. ANALYSIS

In considering Kuhai's claims under the Act, we review legal questions *de*

*novo.* *See Sayaxing v. INS,* 179 F.3d 515, 519 (7th Cir.1999). We defer to the factual findings of the Board and will reverse only if the record lacks substantial evidence to support its factual conclusions. *See Draganova v. INS,* 82 F.3d 716, 720 (7th Cir. 1996).

■ Under the Act, Congress authorized the Attorney General to grant asylum to aliens who are "refugees." *See* 8 U.S.C. § 1158(b)(1). A "refugee" is an alien who is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). According to this definition, eligibility for asylum is conditioned on either of two grounds: past persecution or a well-founded fear of persecution. *See Sayaxing,* 179 F.3d at 519; *Iliev v. INS,* 127 F.3d 638, 641 (7th Cir.1997).

■ Although she initially claimed both to have suffered persecution in the past and to have a well-founded fear of persecution, Kuhai does not appeal the Board's conclusion that her past experiences in Uzbekistan did not constitute persecution as defined by § 1101(a)(42). We focus our attention only on whether Kuhai has established a well-founded fear of persecution if she is forced to return to Uzbekistan. To establish a "well-founded fear" of persecution, Kuhai "must demonstrate that the fear is (subjectively) genuine and that it is reasonable in light of the (objective) credible evidence." *Tzankov v. INS,* 107 F.3d 516, 519 (7th Cir.1997).

Both the Board and the immigration court found that Kuhai failed to demonstrate a well-founded fear of persecution in Uzbekistan because Kuhai could return to Ukraine. The immigration court found that Kuhai "is free to return to the Ukraine since she was born in that country," but that she chose not to because she preferred life in Uzbekistan. The Board adopted the immigration court's findings of fact, finding that she "failed to show that she is unable to return to the Ukraine based upon a reason provided for by the [Act]." Despite the fact that neither party briefed the issue, the Board modified the order of the immigration judge to change Kuhai's country of deportation from Uzbekistan to Ukraine.

■ The Board's finding that Kuhai could return to Ukraine is a finding of fact, which is reviewable under the deferential standard of substantial evidence. *See Draganova,* 82 F.3d at 720. In this instance, however, the standard has not been met, because we find no evidence in the record to support the finding that Kuhai will be able to return to Ukraine. Kuhai is a citizen of Uzbekistan, not Ukraine. Kuhai has never claimed to possess Ukrainian citizenship, and both Kuhai and INS agree that she has Uzbek citizenship.

The immigration judge and the Board both appear to base their finding that Kuhai could return to Ukraine on an advisory opinion given by the State Department, which states that "the applicant is mistaken in stating that she would not be able to return to Ukraine. Ukrainian citizenship law is generous in its provisions." However, we find no such generosity after our review of the Ukrainian citizenship laws considered by the Board and the State Department.

Article 2 of the Ukrainian Law on Citizenship ("Law on Citizenship"), Law of Ukraine, *Pro Hroma Dyanstvo Ukrayiny,* Oct. 8, 1991, 219 HOLOS Ukrayiny 12–13 (1991) (translated from Russian), provides that three classes of people have Ukrainian citizenship:

1) persons who at the moment of the entry of this law into force have been living in Ukraine ... who are not citizens of other states and have not spoken out against acquiring citizenship of Ukraine;

2) persons working for the state, doing military service, or studying outside of Ukraine, on the condition that they were

born on its territory or can prove that they have been residing permanently on its territory, and who are not citizens of other states, and who no later than one year after the entry of this law into force express a desire to become citizens of Ukraine;

3) persons who have acquired citizenship of Ukraine in accordance with this law.

In October 1991, when the Law on Citizenship went into force, Kuhai was a permanent resident and citizen of Uzbekistan. Therefore, she was not eligible for Ukrainian citizenship. The State Department apparently determined that Article 7 of the Law on Citizenship, which provides that "[p]ermanent or temporary residence of a citizen of Ukraine outside the state does not deprive him of citizenship of Ukraine," *id.*, allowed Kuhai to retain Ukrainian citizenship in conjunction with her Uzbek citizenship. However, since she has never been a citizen of Ukraine, Article 7 could not apply to her. Moreover, Article 1 of the Law on Citizenship provides that "[d]ual citizenship is permitted on the basis of bilateral interstate treaties." *Id.* No such treaty exists between Ukraine and Uzbekistan. Therefore, Kuhai cannot possess dual Uzbek and Ukrainian citizenship.

Because she is not a citizen of Ukraine, Ukraine thus far refuses to allow Kuhai to obtain travel documentation that would allow Kuhai to return to Ukraine either voluntarily or involuntarily. Thus, even if we affirm, INS will allow Kuhai to prevail in defeat. By insisting that she be deported to a country that refuses to accept her, INS, in effect, forces Kuhai to remain in the United States. However, according to Article 17 of the Law on Citizenship, Kuhai may be eligible to acquire Ukrainian citizenship if she requests it and renounces her Uzbek citizenship. *See id.* Thus, Ukraine may yet allow Kuhai to re-enter the country in order to establish residency there, in which case the Board's designation may be appropriate.

■ Neither Kuhai nor INS have had the opportunity to brief the issue whether she may be eligible for Ukrainian citizenship or may be forced to return to Ukraine as a non-citizen. INS claims that, because Kuhai failed to brief the issue of Ukrainian citizenship, she has waived the right to contest this finding. *See Sayaxing*, 179 F.3d at 522–23 (finding that petitioner waived right to review by failing to preserve issue before Board). This cannot be correct, because the immigration judge in his order determined that the country designated for deportation would be Uzbekistan, rather than Ukraine. In her appeal of that decision, Kuhai believed that she should address her fear of being deported to Uzbekistan, as the immigration judge designated. Since her fear of persecution related to Uzbekistan and she was scheduled to be deported to Uzbekistan, the issue of her Ukrainian citizenship was not apparent to either party.

■ Instead of considering her claims, the Board determined *sua sponte* that Kuhai could return to Ukraine, without allowing either party to address these questions of Ukrainian law. The Board, acting for the Attorney General, does have wide discretion ultimately to deport unsuccessful asylum applicants to any country that will accept them. *See* 8 U.S.C. § 1231(b)(2)(E). However, we have found that affirming a deportation order without a fair hearing concerning that deportation violates due process. *See Kossov v. INS*, 132 F.3d 405, 408 (7th Cir.1998). The facts in *Kossov* prove informative to the case before us.

In that case, both of the plaintiffs (a married couple) were ethnic Russians who previously lived in the territory which became Latvia on the dissolution of the Soviet Union. The two petitioned for asylum based on their Russian ethnicity but failed to designate a country for deportation, claiming that they were stateless since their previous state of citizenship, the Soviet Union, had dissolved. The immigra-

tion judge initially designated Russia (for the husband) and Latvia (for the wife) as their countries for deportation. However, the merits of their hearing only considered the persecution allegedly suffered by the plaintiffs in Latvia. On their appeal to the Board, they again focused solely on their claims for asylum from persecution in Latvia, rather than on their fear of persecution in Russia. The Board affirmed the immigration judge's denial of their petition and ordered both deported to Russia.

We vacated the Board's decision, because we found that the Board's order to deport the plaintiffs to Russia even though they had no opportunity to address their potential fears of deportation to that country violated the plaintiffs' due process rights to a full and fair hearing. *See id.* We found that the Board had the responsibility to raise the question of their fear of deportation to Russia *sua sponte*, and that it should have informed plaintiffs of their right to address these issues before the court then. *See id.* at 408–09. Lacking substantial evidence in the record to make a determination on the plaintiffs' fear of persecution in Russia, we remanded to the Board for further proceedings to determine the merit of their claims.

■ Here the Board again has modified a plaintiff's order of deportation without allowing the plaintiff to brief issues relevant to her deportation to that country. As we noted in *Kossov*, "It is too much to expect that [plaintiffs] should have the expertise to adapt instantaneously to such an unexpected turn of events." *Id.* at 409. In addition, the Board here used the fact that Kuhai could return to Ukraine to support the proposition that she lacked a well-founded fear of persecution upon deportation. In this case, we find that that determination was made without substantial evidence. Because we are confronted with an undeveloped evidentiary record on Kuhai's ability to return to Ukraine, we remand this case to the Board to consider the issues whether Kuhai may be eligible for Ukrainian citizenship or forced to return to Ukraine as a non-citizen of that country.

Finally, if the Board determines again that Kuhai is not eligible for Ukrainian citizenship and cannot be forced to return there, we also find that the Board has presented no additional evidence to support its finding that Kuhai failed to prove a well-founded fear of persecution if she is forced to return to Uzbekistan. Both Kuhai and INS produced evidence in the form of affidavits and expert testimony on current conditions for Russian speakers in Uzbekistan. Since Kuhai would presumably be forced to return to Uzbekistan if Ukraine refuses her, the Board must determine whether her fear actually exists and whether such fear is reasonable based on the credible evidence. *See Asani v. INS*, 154 F.3d 719, 725 (7th Cir.1998) (remanding Board's order to consider well-founded fear of persecution).

### III. Conclusion

We find that the Board erred by failing to allow the parties to brief the issues whether Kuhai was eligible for Ukrainian citizenship and whether her lack of citizenship would prevent her from being deported to that country. Accordingly, we Remand so that the Board may consider whether she is a citizen of Ukraine and, in the event that she is not, whether she has demonstrated a well-founded fear of persecution if forced to return to Uzbekistan.