No. 03-3614
File Name: 05a0606n.06
Filed: July 19, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NABEEL HUSNI ZAYED,           )
          )
  Petitioner,           )
          )
    v.           ) ON PETITION FOR REVIEW OF
          ) AN ORDER OF THE BOARD OF
ALBERTO GONZALES, Attorney General of   ) IMMIGRATION APPEALS
the United States,           )
          )
  Respondent.           )

Before:     **NELSON** and **COLE**, Circuit Judges, and **SARGUS**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge. This matter comes before us on a petition for review of an order in which the Board of Immigration Appeals denied the petitioner's requests for asylum and voluntary departure. The question presented is whether the petitioner received a full and fair opportunity to demonstrate his eligibility for asylum, thereby satisfying the requirements of the Due Process Clause of the Constitution. We are not persuaded that the administrative proceedings at issue were conducted in a manner that denied the petitioner due process. Accordingly, and because we lack jurisdiction to review the merits of the asylum claim, the petition for review will be denied.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

I

The petitioner, Nabeel Zayed, is a Palestinian native of the West Bank area in the Middle East. Mr. Zayed's citizenship is a matter of dispute. The immigration judge found him to be a citizen of the Kingdom of Jordan, but Zayed maintains that he is stateless.

Mr. Zayed entered the United States in January or February of 1989. In 1991 an immigration judge, or "IJ," found him removable. The IJ denied an application for asylum and withholding of removal. A request for voluntary departure was granted. The Board dismissed Zayed's administrative appeal in 1992, and in 1993 the Board denied a motion to reopen.

Mr. Zayed returned to the West Bank in late 1993 or early 1994. He stayed there only a few months, however, re-entering the United States in March of 1994. Zayed subsequently overstayed his visa, was placed in removal proceedings, and filed a new application for asylum, withholding of removal, and voluntary departure. At an initial hearing on the new application, the immigration judge designated Israel as the country to which Mr. Zayed would be removed if his requests for relief were denied.

Mr. Zayed's current claim for asylum is based both on the Israeli government's refusal to grant Palestinians the rights and privileges of citizenship and on threats from Palestinians to kill Zayed and his family as "collaborators" with the Israelis. Mr. Zayed testified that his brother was killed in March of 1999 after a leaflet identified the brother as a "traitor" who

worked with Israelis and "snitch[ed]" on Palestinians to the Israeli government. Mr. Zayed expressed fear that he also would be killed if he returned to Israel.

The immigration judge denied Mr. Zayed's application and, despite the earlier designation of Israel, ordered Zayed removed to Jordan. The judge found Zayed to be a citizen of Jordan on the basis of a Jordanian passport and other evidence presented by the government. On the merits of the application for asylum and withholding of removal, the judge questioned Mr. Zayed's credibility but held that his testimony, even if believed, did not establish the statutory grounds for relief. The judge denied Zayed's request for voluntary departure on the ground that he had abused that privilege in the past.

Mr. Zayed appealed to the Board, which dismissed the appeal. The Board held that Mr. Zayed had not presented evidence of a material change in circumstances since the denial of his first asylum application. It rejected Zayed's argument that he did not have sufficient notice that Jordan might be designated as the country to which he would be removed. It also rejected Zayed's argument that the immigration judge should have continued the asylum case pending resolution of a visa application that had been filed by Zayed's wife on his behalf. Finally, the Board affirmed the denial of voluntary departure.

Mr. Zayed filed a timely petition for review.

II

Once an alien has applied for asylum and the application has been denied, a subsequent application may not be considered unless the alien demonstrates the existence of changed circumstances that materially affect his eligibility for asylum. See 8 U.S.C. § 1158(a)(2)(C) and (D). Where the Attorney General determines that the alien has not demonstrated changed circumstances, "[n]o court shall have jurisdiction to review" the determination. *Id.* § 1158(a)(3). As we have seen, the Attorney General's designee – the Board – concluded that Mr. Zayed "did not present evidence of materially changed circumstances since our earlier evaluation of his asylum claim." Accordingly, the merits of Zayed's asylum claim are not before us.

Insofar as Mr. Zayed asserts a denial of fundamental fairness in the hearing on his asylum claim, however, thereby raising a constitutional issue, we may consider the assertion. See *Gjyzi v. Ashcroft*, 386 F.3d 710, 714 (6th Cir. 2004), where we acknowledged our jurisdiction to decide whether, in the course of making a determination that is unreviewable under § 1158(a)(2), the Board violated an alien's right to due process.

We do not have jurisdiction to review the denial of Mr. Zayed's request for voluntary departure. See 8 U.S.C. § 1229c(f). In addition, Zayed waived any argument with respect to withholding of removal by failing to raise it in his brief to this court. See *Kalaj v.*

*Gonzales*, 127 Fed. Appx. 766, 768 (6ᵗʰ Cir. 2005).[1] The only question before us, therefore,

is whether Mr. Zayed had a fair opportunity to demonstrate his eligibility for asylum.

A

Mr. Zayed argues that his hearing was fundamentally unfair because the immigration

judge ordered him removed to Jordan, rather than to Israel, without having given him prior

notice that Jordan was under consideration. He relies on case law establishing that an order

of removal to a particular country violates an alien's due process rights when the alien has

had no opportunity to address his or her fear of persecution in that country. See *Kuhai v.*

*INS*, 199 F.3d 909, 913-14 (7ᵗʰ Cir. 1999); *Andriasian v. INS*, 180 F.3d 1033, 1041 (9ᵗʰ Cir.

1999).

*Kuhai* and *Andriasian* are distinguishable from this case, in our view, because Mr.

Zayed had reason to be aware that Jordan might be designated as the country of removal.

The document charging Zayed with removability alleged that he was a citizen of Jordan.

---

[1]There might be some tension between *Kalaj* and another of our unpublished decisions, *Gao v. Ashcroft*, No. 03-4169, 2005 WL 1285643 (6ᵗʰ Cir. May 23, 2005). In *Gao*, we held that an alien did not waive her claim for withholding of removal by focusing in her brief on the denial of asylum. See *Gao*, 1995 WL 1286543, at *2. We think that *Gao* is distinguishable, however, because the petitioner there "explicitly challenged the IJ's and the BIA's credibility determination as a basis for dismissing *all* of her claims." *Id.* In the case at bar, Mr. Zayed specifically identified his claims for asylum and voluntary departure as the claims that should have been granted. He has never suggested that his argument as to those claims was intended to apply to all of his claims, including the one for withholding of removal.

Zayed held a Jordanian passport and had previously claimed to be a Jordanian citizen. He denied having Jordanian citizenship at the initial hearing, to be sure, and the immigration judge designated Israel at that time. But the judge advised the parties in advance of the merits hearing that designation of the country of removal remained an issue. Then, on the day of the hearing, without objection from Zayed's lawyer, the judge took evidence on the question. We are satisfied that Mr. Zayed, unlike the petitioners in *Kuhai* and *Andriasian*, had a fair opportunity to demonstrate that he feared persecution in the country that was ultimately designated.

Indeed, Mr. Zayed actually testified about his fear of living in Jordan, saying that he could be targeted there by the family of the man who killed his brother or by an organization to which that man belonged. At no time did Zayed or his lawyer suggest that he was unprepared to present additional evidence in that regard. Mr. Zayed sought a continuance both before and during the merits hearing, but nothing in the record suggests that his grounds for doing so related to the designation question. In these circumstances, we are not persuaded that the manner in which Jordan was designated as the country of removal constituted a denial of due process.

B

Mr. Zayed also argues that he was denied a fair hearing by reason of the immigration judge's admission of two documents. One was a message from the American Consulate in

Jerusalem to an INS office in Cleveland stating that "as a Jordanian citizen Mr. Zayed can travel to Jordan and is able to return there in the event he does not wish to return to Jerusalem." Mr. Zayed objected to the admission of this document on the ground that the inquiry that prompted it was not available. The second document was a United States Department of State report on human rights in Israel and its occupied territories. This report was admitted without objection.

We do not believe that the immigration judge's admission of these documents was improper. But if the IJ did err, we do not think the error rises to the level of a due process violation. The demands of due process are satisfied if an asylum applicant is given "a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the Government." *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (internal quotation marks omitted). A due process violation occurs only when the proceeding is "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (internal quotation marks omitted). That is not the situation here.

C

Mr. Zayed's final argument is that the immigration judge should have continued the merits hearing pending reconsideration of a visa petition filed by Zayed's wife on his behalf. Mr. Zayed moved for the continuance about a month before the hearing, and the immigration

judge denied the motion. Zayed renewed the motion on the day of the hearing, citing both the pending visa petition and the State Department's failure to render a requested advisory opinion on Zayed's asylum claim. Again the immigration judge declined to grant the continuance.

The refusal to continue the merits hearing did not compromise Mr. Zayed's due process rights. Although Zayed asserts that he "would be eligible for immediate adjustment to lawful permanent resident status[] if his wife's [visa] petition were timely reconsidered," we have no reason to suppose that the wife's petition would have been granted on reconsideration. And we have good reason to suppose otherwise: Mr. Zayed's wife was herself placed in removal proceedings on a charge that she had fraudulently obtained a visa. See *Zayed v. United States*, 368 F.3d 902, 904 (6th Cir. 2004). In these circumstances, we are not persuaded that Mr. Zayed suffered any prejudice as a result of the denial of his motions for a continuance.

The petition for review is **DENIED**.