**Jan ZALEGA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 90–1032.**

United States Court of Appeals, Seventh Circuit.

Argued Aug. 9, 1990.

Decided Oct. 26, 1990.

**1258**

Y. Judd Azulay, Roderick F. Mollison, Azulay & Azulay, Chicago, Ill., for petitioner.

Anton R. Valukas, U.S. Atty., Chicago, Ill., Lori L. Scialabba, Lauri S. Filppu, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, D.C., A.D. Moyer, I.N.S., Chicago, Ill., for respondent.

Before COFFEY, FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Jan Zalega petitions for review of a denial by the United States Immigration and Naturalization Service Board of Immigration Appeals (BIA) of his applications for asylum under section 208(a) of the Immigration and Nationality Act (Immigration Act), 8 U.S.C. § 1158(a), and withholding of deportation under section 243(h), 8 U.S.C. § 1253(h).[1]

## I.

Jan Zalega is a citizen of Poland. From 1974 to February 1982, Zalega worked as a manager of a livestock farm owned by the Polish government. Sometime at the end of 1981, Zalega refused to sign an oath of loyalty to party officials. Soon after his refusal, military police arrested and interrogated Zalega on three occasions. In February 1982, he was dismissed from his job. Zalega then started his own business, a fox farm. Zalega was again arrested in April of 1982 and interrogated about his association with Janusz Majewski, a Solidarity member to whom he had loaned money.[2] Beginning in June of 1982 and continuing until December of 1984, the police would summon Zalega every two to three months to the police station and interrogate him over a period of three to five hours primarily about Majewski, but also about his own

---

**1.** Zalega has not supported his contention that the BIA improperly denied his application for withholding of deportation with any argument or case citations. The issue is thus waived on appeal. *See Mraovic v. Elgin, Joliet & Eastern Ry. Co.,* 897 F.2d 268 (7th Cir.1990).

**2.** Zalega was not himself a member of Solidarity, nor of any political party. Zalega maintained a position of neutrality.

activities. Zalega's final detention occurred in December of 1984 while he was in Warsaw selling fox furs. Zalega was arrested and detained for thirty-six hours, but then released when the police determined that his papers were in order. There is no indication that this detention was related to Zalega's failure to sign the loyalty oath. When Zalega returned home, he found that his apartment had been searched and some money and foxes confiscated.

Zalega also asserted as evidence of persecution that the police searched his parents' home and detained them after a brother left Poland for the United States in 1983. The police also questioned Zalega's parents after he left Poland in 1984. Finally, Zalega offers as further evidence of persecution that the Polish government, which controls ownership of real property, had rejected his requests to acquire additional land to expand his fox farm. Zalega did not offer documentary evidence of the general conditions in Poland at the time of his hearing.

On December 22, 1984, Zalega entered the United States as a visitor for pleasure. Zalega overstayed his visa; consequently, on July 17, 1985, the INS issued an Order to Show Cause why he should not be deported. Zalega conceded deportability and applied for withholding of deportation and asylum, asserting political persecution. The immigration judge denied Zalega's applications, but granted him a three-month period of voluntary departure.

The BIA affirmed the decision of the immigration judge and concluded that the harassment Zalega experienced, and feared would occur again if he returned, did not rise to the level of persecution within the meaning of the Immigration Act.[3] The BIA also concluded that Zalega necessarily could not meet the stricter standard for withholding of deportation, that is, that there was a clear probability that he would be persecuted.[4]

## II.

■ To the extent that this case turns on the BIA's interpretation of the Immigration Act, our review is *de novo;* however, so long as its interpretation is reasonable, we must defer to the BIA. *See Variamparambil v. INS,* 831 F.2d 1362, 1366 (7th Cir.1987) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)). We review the BIA's factual determination that Zalega did not experience persecution, and thus was statutorily ineligible for asylum or withholding of deportation, under a substantial evidence standard. *See Perlera–Escobar v. Executive Office for Immigration,* 894 F.2d 1292, 1296 (11th Cir.1990).

■ An "alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of [8 U.S.C. § 1101(a)(42)(A) ]." 8 U.S.C. § 1158. Section 101(a)(42)(A) of the Immigration Act defines "refugee" as

**3.** The immigration judge applied the "clear probability" of persecution standard of proof in deciding whether the alien qualified for asylum. While Zalega's appeal was pending before the BIA, the United States Supreme Court decided *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), in which it held that the "clear probability" standard does not govern asylum applications under § 208. The BIA properly undertook a *de novo* review of the record and applied the "well-founded fear" standard. Thus, the error of the immigration judge was harmless. *See Chatila v. INS,* 770 F.2d 786, 790 (9th Cir.1985) (immigration judge's error in applying "clear probability" standard was rendered harmless by BIA's review). At oral argument, Zalega argued for the first time that "because the credibility of the [alien] cannot be

judged from the record, the *de novo* review was insufficient." We do not reach this issue because an issue raised for the first time at oral argument is waived. *See United States v. Rodriguez,* 888 F.2d 519, 524 (7th Cir.1989).

**4.** Section 243(h) of the Immigration Act governs the withholding of deportation and provides in pertinent part:

The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1253(h).

any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion

....

8 U.S.C. § 1101(a)(42)(A). An alien may show either past persecution or a well-founded fear of persecution if he or she were to return. *See In re Chen*, No. A-26219652, 1989 BIA LEXIS 10 (Interim Decision) (1989). "Persecution" is not defined in the Immigration Act, but has been defined as the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive. *Berdo v. INS*, 432 F.2d 824, 847 (6th Cir.1970). " 'Persecution' or 'well-founded fear of persecution' encompass[es] more than just restrictions or threats to life and liberty." *Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988); *Blanco–Comarribas v. INS*, 830 F.2d 1039, 1043 (9th Cir. 1987).

■ The BIA concluded that Zalega's detentions and interrogations by the Polish authorities were not sufficient to show past persecution. This conclusion is supported by substantial evidence. For these detentions to be considered persecution, Zalega had to demonstrate that his detention involved more than simple incarceration. *See Mendez–Efrain v. INS*, 813 F.2d 279, 283 (9th Cir.1987) (although detained by military for four days, fact that alien was released without being tortured, molested or threatened constitutes substantial evidence that he would not be subject to persecution). Zalega was never formally charged or convicted of any crime, was detained for relatively short periods of time and was not mistreated while incarcerated. It was reasonable for the BIA to conclude that this was not substantial evidence of persecution.

We also note that Zalega had no trouble getting a passport and visa. He received them quickly and was able to leave Poland without any interference by the authorities. This further supports the BIA's decision.

Zalega's termination from his employment and his difficulty in obtaining additional land for his fox farm may be characterized as economic persecution. The economic persecution Zalega suffered is not, however, substantial enough to qualify him for asylum. *See Desir*, 840 F.2d at 727 (persecution shown where alien's ability to earn livelihood was severely impaired by Ton Ton Macoutes' threats and attempts on his life); *Berdo*, 432 F.2d at 847 (substantial economic detriment may be sufficient); *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir. 1969) (imposition of economic sanctions which are sufficiently harsh to constitute a threat to life or freedom because of race, religion or political opinion may support application for withholding of deportation). *Cf. Youssefinia v. INS*, 784 F.2d 1254 (5th Cir.1986) (alien argued that total withdrawal of economic opportunity may support well-founded fear of persecution, but did not meet burden of proof for such a showing); *Minwalla v. INS*, 706 F.2d 831, 835 (8th Cir.1983) (mere economic detriment is not sufficient); *Cheng Kai Fu v. INS*, 386 F.2d 750, 753 (2d Cir.1967), *cert. denied*, 390 U.S. 1003, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968) (generalized economic difficulties are not sufficient).

Zalega was able to start a business and support himself consistent with his prior standard of living. He presumably had enough money to buy land and a round-trip airline ticket to the United States. Although Zalega complained that he could not get a government job commensurate with his education and training and that he could not obtain additional land to expand his fox farm, the economic disadvantage Zalega suffered was minor. This is substantial evidence that Zalega's economic difficulties did not rise to the level of persecution.

Zalega testified at the deportation hearing that if he were returned to Poland, the authorities would resume the questioning, would deny him suitable government employment and would not allow him to travel

to capitalist countries.[5] Having concluded that there was substantial evidence to support the BIA's conclusion that the harassment Zalega previously suffered did not constitute persecution, we cannot logically conclude that Zalega's fear, however genuine, that he would again experience these same difficulties satisfies the well-founded fear of persecution standard.

### III.

For these reasons, the order of the Board of Immigration Appeals is AFFIRMED.

---

5. Zalega's testimony predated the recent, dramatic changes in Poland and Eastern Europe. From outward indications, conditions in Poland have improved appreciably since Zalega sought asylum; however, the BIA's decision was based on the finding that Zalega had not established past persecution, and we review the BIA's decision in light of the circumstances that existed when the decision was made. *See Carvajal–Munoz v. INS,* 743 F.2d 562, 564 n. 2 (7th Cir.1984).