**Zhongkeng TANG, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

**No. 03–1001.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 2003.

Decided Aug. 13, 2004.

Pengtian Ma, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Elizabeth J. Stevens, Department of Justice, Washington, DC, for Respondent.

Before Hon. JOEL M. FLAUM, Chief Judge, Hon. WILLIAM J. BAUER, and Hon. ILANA DIAMOND ROVNER, Circuit Judges.

## ORDER

Zhongkeng Tang, a native and citizen of China, seeks review of a decision of the Board of Immigration Appeals finding him removable, denying his application for political asylum and withholding of removal, and refusing voluntary departure. For the reasons set forth below, we grant the petition for review and vacate and remand the Board's decision.

### Facts and Background Proceedings

Tang is seeking asylum based on his connection with "Yi Guan Dao." Yi Guan Dao, or the "Way of Basic Unity," is a religion that combines elements of Confucianism, Daoism, Buddhism, and Christianity. *See* U.S. Dept. of State, *China: Profile of Asylum Claims and Country Conditions* ¶ 33 (April 14, 1998). The religion was banned in 1949, but reemerged in the 1990s. U.S. Dept. of State, *Country Reports on Human Rights Practices for 1997* (Jan. 30, 1998). Chinese authorities consider Yi Guan Dao to be a "cult," and in 1997 began a "government crackdown" on it and similar religions. *Id.* The Human Rights Watch has described followers of Yi Guan Dao as a "persecuted group," and has noted that the Chinese Public

Security Bureau considers the group to be "counterrevolutionary." Human Rights Watch, *China: State Control of Religion* 30 (October 1997). Tang testified that Yi Guan Dao followers believe in "trying to resolve disease and how people resolve their bad fortune." Tang also testified that the Chinese government is "very much against" the Yi Guan Dao religion and that the government believes that it is "destructive to the society," and that its followers are "counterrevolutionaries."

At his hearing in May 1998, Tang testified that he was arrested and beaten because he practiced Yi Guan Dao. Tang explained that when he was 16 years old he began assisting the leader of the Yi Guan Dao group in his village of Dingqi, located in Fujian province. He testified that he knew some of the members and liked what the group was doing, so he began taking part in their bimonthly ceremonies, and continued to do so for approximately eight years. He stated that the members of the group were very close "like a family."

Tang testified that in 1993, he and other group members were arrested and interrogated. He did not provide any details regarding his arrest, but stated that he was not detained or beaten. He testified that he was arrested a second time in 1994, along with five other Yi Guan Dao members in Dingqi because he belonged to the Yi Guan Dao group. Tang testified that he was taken into custody for three nights and two days and beaten with sticks and an electric whip by public security officers. He testified that he bled a lot, that his head hurt, and that he was so dizzy he could not see straight. The jail was very small and "there was nowhere to move." He also did not receive food or water while he was detained. After he was released, Tang testified, he "was hiding all over the

place" for several months until he left for the United States as a stowaway on a cruise ship. Tang further testified that police have visited his parents, who still live in China, to question them about him.

On cross-examination the government noted that in Tang's initial application for asylum he stated that his 1994 arrest was for kidnapping, rather than because of his religious beliefs. He stated that he and his girlfriend, Lanxiang Chen, left Dingqi for Fuzhou, the provincial capital, after she told him that her father was going to force her to marry another man. After several months, Chen's father learned that they were in Fuzhou and had Tang "arrested for kidnapping women." A few weeks after the police released him, Tang stated, he received a note from Chen asking him to leave quickly because her father had reported to the public security agency that he was a key member of Yi Guan Dao.

The IJ denied Tang's application, finding that Tang had not established past persecution or a reasonable probability of future persecution based on religion. The IJ found that Tang did not suffer persecution because he was imprisoned only once, and for a limited duration. The IJ also expressed doubt that the police wanted to arrest Tang or "are interested in him in any way" because he already had been outside of China for three years. The IJ also noted inconsistencies between Tang's testimony and his application, but did not make a specific credibility finding. The IJ also found Tang ineligible for withholding of removal. Tang appealed to the BIA, which summarily affirmed the judgment. This timely petition for review followed.

### Analysis

Because the BIA affirmed without opinion, we review the IJ's analysis as if it were the BIA's, and uphold the decision if it is supported by substantial evidence.

See *Oforji v. Ashcroft*, 354 F.3d 609, 612 (7th Cir.2003). We will reverse the BIA's determination only when the evidence compels a different result. *Ciorba v. Ashcroft*, 323 F.3d 539, 544 (7th Cir.2003).

To qualify for asylum, Tang must establish "refugee" status, i.e., that he is an alien unwilling or unable to return home "because of ... a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Tang could show this by proving either that he (1) suffered past persecution, or (2) has a well-founded fear of future persecution. *See Oforji*, 354 F.3d at 613. A finding of past persecution shifts to the government the burden of rebutting the presumptive fear of future persecution. *See Bace v. Ashcroft*, 352 F.3d 1133, 1137 (7th Cir.2003); 8 C.F.R. § 208.13(b)(1).

The Immigration and Nationality Act does not define "persecution." But we have defined persecution under the INA as "punishment" or the "infliction of harm" for political, religious, or other illegitimate reasons "that rises above the level of mere 'harassment.'" *Tamas–Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir.2000). Physical abuse need not cause "serious injury" to qualify as persecution. *Asani v. INS*, 154 F.3d 719, 722–23 (7th Cir.1998). And a single episode of physical abuse can be sufficient to constitute persecution, as long as a petitioner offers details about the incident to establish its severity. *See Dandan v. Ashcroft*, 339 F.3d 567, 573 (7th Cir.2003).

We believe that Tang's imprisonment and beatings, if found credible, rise above "mere harassment" and qualify as proof of past persecution. In cases involving similar mistreatment and injuries we have

found persecution. In *Asani*, 154 F.3d at 725, we held that the petitioner was likely persecuted where he testified that while detained by police he was beaten, resulting in the loss of two teeth, and was deprived of sufficient food and water. In *Vaduva v. INS*, 131 F.3d 689 (7th Cir.1997), we found past persecution where the petitioner testified that he was punched by strangers resulting in a bruised face and a broken finger. In contrast, we have not found persecution where a petitioner gives only general statements about his mistreatment or injuries. *See Dandan*, 339 F.3d at 573–74 (concluding that petitioner's three-day detention and beating resulting in a "swollen" face did not constitute past persecution); *Skalak v. INS*, 944 F.2d 364, 365 (7th Cir.1991) (determining that two three-day detentions involving interrogation but no injury did not constitute past persecution). As we explained in *Dandan*, "[w]e do not hold that lost teeth or broken bones are the *sine qua non* of persecution, but these specifics indicate the severity of the beating and support its claim to be considered persecution." *Dandan*, 339 F.3d at 574.

This case is more like *Asani* and *Vaduva* than like *Dandan*: Tang provided specific details regarding the beatings he received and the injuries he suffered. Tang testified that the public security officers beat him repeatedly with sticks and with an electric whip until he was bleeding severely. He also said that the beatings caused his head to hurt and he became very dizzy. Thus, like the petitioners in *Asani* and *Vaduva*, and unlike the petitioner in *Dandan*, Tang described his beatings and his resulting injuries in some detail so that we could determine his treatment rose above the level of mere harassment.

Although we believe that the record shows that Tang suffered persecution, the IJ here did not specifically find whether Tang was credible and whether Tang's persecution was on account of his religion. Without specific findings, we cannot determine whether Tang was persecuted and was arrested because of his religion or because the police thought that he abducted his girlfriend after they left Dingqi for Fuzhou. Where the BIA has not made findings on an essential asylum issue we must remand the issue to the BIA for a decision. *See INS v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). Thus, we remand to the BIA for a determination of whether Tang was persecuted and whether that persecution was because of his religion. Such findings would then effectively shift "to the government the burden of rebutting the presumptive fear of future persecution." *Dandan*, 339 F.3d at 574. We GRANT the petition for review, VACATE the judgment of the BIA, and REMAND for further proceedings.