**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2005
Decided September 26, 2005

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-2768

| | |
|---|---|
| ARTUR I. ZAGORCANI, ENGJELLUSHE ZAGORCANI, and BJORI ZAGORCANI, *Petitioners*, | Petition for Review of an Order of the Board of Immigration Appeals |
| | No. A76-148-867 |
| | No. A76-148-866 |
| *v.* | No. A76-456-442 |
| ALBERTO R. GONZALES, *Respondent*. | |

**O R D E R**

Artur Zagorcani, his wife, Engjellushe, and their son Bjori petition for review of the denial of their claim for asylum. The Immigration Judge ("IJ") found that they neither suffered past persecution nor had an objectively reasonable fear of future persecution. Because the evidence does not compel a different outcome, we deny the petition for review.

## I.  Background

Artur Zagorcani is a native of Fier, Albania.  He came to the United States in 1997 on a temporary visa and overstayed.  Zagorcani testified that he had been persecuted by the then-ruling Democratic Party, of which he had been a member, and feared future persecution from the Socialist Party that later came to power.  Zagorcani claimed to be one of the members who founded the Democratic Party in Fier in 1991.  His party connections helped him obtain a government job, first as an inspector for the Branch of Taxation and later as Branch chairman.  As chairman, he was responsible for inspecting and assessing taxes for private individuals and enterprises and for confiscating untaxed goods.

After Zagorcani's promotion, the Democratic Party began to ask him to use his office to its advantage.  He testified that party officials asked him to use his position to confiscate goods from "people of the opposition, the former communists and socialist party."  Zagorcani complied "to the extent that the law allowed me, but not more."  The party also told him to use his office and his inspectors to improperly collect money that could be used for political purposes.  Zagorcani refused.  Around this time, he also challenged party leaders over their support for financial pyramid schemes that eventually collapsed, severely disrupting the Albanian economy and damaging the reputation of the Democratic Party.

Zagorcani asserted that his challenge to the party's leadership and refusal to follow its directions resulted in retribution.  He claimed that party officials escorted him to a police station, where he was told that "we make the laws and we can imprison anyone we wish."  Just before the elections, government officials came to his office and searched it pursuant to a warrant.  He characterized this search as retaliation for refusing to toe the party line, and claims that the officials intended to find an excuse to fire him.  Zagorcani formally resigned from the party in September 1996.  Two months later, he was replaced as chairman of the Taxation Branch and demoted to inspector.

In his written statement Zagorcani indicated that the retaliation against him escalated in February 1997.  He related that the local prosecutor's office summoned him to a police station, where he was accused of participating in antigovernment protests and threatened with imprisonment.  As he was leaving the police station, three men in plain clothes beat him and threw him down a flight of stairs.  Shortly thereafter, one of Zagorcani's coworkers came to his home to inform him that he had been fired, and relayed a message from the new head of the Taxation Branch to the effect that the harassment was "only the beginning."  After Zagorcani received another summons from local law enforcement, he fled the country for the United States.

In his application for asylum, Zagorcani said he believed that the Democratic Party still had the means to persecute him despite its ouster from power. Moreover, Zagorcani believed that the ruling Socialist Party would persecute him on account of his prior affiliation with the Democratic Party.

The IJ denied the application, finding no evidence that the Democratic Party had the wherewithal to punish Zagorcani or that the legal system would not protect him from harassment. The IJ also found that there was no evidence that the Socialist Party would persecute its past opponents. Zagorcani appealed to the Board of Immigration Appeals ("BIA") and later sought a remand for the IJ to consider new evidence—most significantly, a certificate from a Fier court stating that Zagorcani's wife, Engjellushe, had been temporarily detained and ordered to make biweekly appearances at the local police station as a consequence of his indictment in absentia for organizing the arson of a Socialist Party office. Based on this submission, the BIA remanded the case to the IJ with instructions to review and analyze the new evidence.

At the remand hearing Zagorcani's case was consolidated with that of his wife and their son, who had by then entered the United States. Engjellushe Zagorcani testified that police officers detained her for two days in July 1998 to question her about her husband's whereabouts. She said one of the officers accused her husband of using his position in the taxation office to shake down businesses run by Socialist Party members. When Engjellushe denied this, the officer told her that her husband was too partisan to have obeyed the law in carrying out his taxation office duties. The officer also accused Artur Zagorcani of organizing antigovernment rallies in order to burn down the Socialist Party headquarters, and told her that if Artur was not held accountable, then she would "never see the light of sun again." Engjellushe Zagorcani attempted to procure a lawyer, but the first attorney she contacted declined to take her case out of fear of possible retaliation to his children.

The IJ found the new evidence—especially the certificate from the Fier court—to be "highly questionable." The government submitted evaluations of the certificate by a forensic document examiner and a consular investigator. The investigator reported that the Fier court could not locate a copy of the certificate in its own records. Both the investigator and the document examiner opined that the certificate was likely invalid. Accordingly, the IJ denied the Zagorcanis' request for asylum, and the BIA affirmed the IJ's decision.

## II.  Analysis

The BIA's decision must be affirmed on review if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005), *quoting INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). The standard is highly deferential; we

"may not reverse a finding of no past persecution simply because we believe it was wrongly decided." *Diallo v. Ashcroft*, 381 F.3d 687, 698 (7th Cir. 2004). It should be reversed only if the evidence compels a different result. *Prela*, 394 F.3d at 518.

The Zagorcanis argue that the BIA and the IJ ignored the evidence of past persecution that would compel a different result, particularly the beating that Artur sustained after being summoned to the local police station in 1997. But the IJ in fact acknowledged Artur Zagorcani's testimony in the initial order, presenting a factual summary of the attack as Zagorcani described it. Addressing Zagorcani's claims of persecution cumulatively, the IJ then found that "the record does not compel the conclusion that the respondent was subjected to a level of mistreatment that rises to the level of past persecution." The BIA followed this analysis in its subsequent orders.

Indeed, the treatment the Zagorcanis claim to have suffered falls below what we have recognized as persecution. Generally, "low-level, ad hoc, official discrimination" will not support a claim for asylum. *Bucur v. I.N.S.* 109 F.3d 399, 403 (7th Cir. 1997). The assessment of whether discrimination or harassment rises to persecution is made on a case-by-case basis. For instance, a two-week detention coupled with regular beatings has been held to be persecution, *Asani v. INS*, 154 F.3d 719, 722-23 (7th Cir. 1998), but a three-day detention with minimal food and at least one beating has not, *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003). Based on the length of detention and the degree of mistreatment involved, the facts here resemble *Dandan* more than *Asani*. Artur Zagorcani lost his government job, was summoned to a police station but not detained, and beaten once; Engjellushe Zagorcani was detained for two days. This evidence does not compel a result different from that reached by the BIA. *See Soumahoro v. Gonzales,* 415 F.3d 732, 738 (7th Cir. 2005).

The Zagorcanis also assert that the BIA erred by not finding that they had a well-founded fear of persecution upon their return to Albania. Without a showing of past persecution, the Zagorcanis do not gain the presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b). Accordingly, they must prove that they genuinely fear that they "will be persecuted based on a protected ground" if returned to Albania, and that their "fears are objectively reasonable." *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005). The BIA concluded that the evidence was insufficient to show that Artur Zagorcani would be targeted by the Democratic or Socialist Parties or would not receive a fair trial if he were returned to Albania. The Zagorcanis challenge these determinations, pointing to documentary evidence in the record, specifically the Fier court certificate. They now contend that the certificate must have been forged by corrupt court officials, and cite *Kourski v. Ashcroft*, 355 F.3d 1038 (7th Cir. 2004), for the proposition that a document which the asylum applicant does not know is a forgery should not bear adversely on the applicant's credibility. *Id.* at 1039-40. However, the BIA's

rejection of the Zagorcanis' asylum claim was not premised upon an adverse credibility finding; it was based instead upon the insufficiency of the evidence. Accordingly, *Kourski* does not apply.  The petition for review is DENIED.