NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 09a0202n.06

Filed: March 16, 2009

No. 07-3539

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROKO JUNCAJ; LJENA JUNCAJ; VERA JUNCAJ; TOMA JUNCAJ; ANTON JUNCAJ, | ) ) ) ) | |
| Petitioners, | ) ) | **ON APPEAL** FROM THE BUREAU OF IMMIGRATION |
| v. | ) ) | APPEALS |
| ERIC H. HOLDER, JR. Attorney General,[*] | ) ) ) | **OPINION** |
| Respondent. | ) ) ) ) | |

Before: MARTIN and NORRIS, Circuit Judges, and STAMP, District Judge.[**]

FREDERICK P. STAMP, JR., District Judge. Roko Juncaj ("Roko") entered the United

States in non-immigrant status on or about August 13, 1996, and was later granted administrative

asylum. His wife, Ljena, and their three children, Anton, Toma, and Vera, subsequently obtained

derivative asylee status as Roko's dependents. On May 16, 2001, the Immigration and

---

[*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as the respondent in this case.

[**]The Honorable Frederick P. Stamp, Jr., United States District Judge for the Northern District of West Virginia sitting by designation.

Naturalization Service ("the Service")[1] terminated the asylee status of the entire Juncaj family after the Service made a finding of fraud in Roko's asylum application, making him ineligible for asylum at the time it was granted.

The Service then initiated removal proceedings. During removal proceedings, Roko challenged the finding of fraud and renewed his asylum application at a hearing in which one of the many immigration judges who presided over this case informed him that he was not required to file a new application to effect renewal. Subsequently, a different immigration judge determined that Roko had abandoned his asylum application by failing to meet a court-imposed deadline for filing applications, after which a third immigration judge ordered the petitioners removed. The petitioners requested review by the Bureau of Immigration Appeals ("BIA").[2] Without comment, the BIA upheld the Immigration Court. This appeal followed.[3]

The petitioners argue that the Immigration Court violated their due process rights by denying Roko a merits hearing on his asylum application and the allegation of fraud forming the basis for the Service's decision to terminate asylum. This Court agrees. For the reasons that follow, this Court concludes that the order finding all forms of relief abandoned must be vacated to the extent that it

---

[1]The functions of the Immigration and Naturalization Service, which was part of the United States Department of Justice, have since been transferred to the Department of Homeland Security and divided between the Bureau of Citizenship and Immigration Services ("CIS") and the Bureau of Customs and Enforcement ("ICE").

[2]Although the petitioners before this Court were the respondents in the proceedings below, this opinion refers to them throughout as petitioners.

[3]After the notice of appeal was filed, the petitioners were detained by the Service pending removal. The petitioners obtained a stay of removal from this Court and filed a motion for release pending review of this appeal. As stated below, this Court will deny as moot the petitioners' motion for release.

applies to the previously filed asylum application; that the removal order, which was predicated upon the order finding all forms of relief abandoned, must be vacated; and that this action must be remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

Roko Juncaj entered the United States in non-immigrant visitor status on August 13, 1996, and was authorized to remain until October 22, 1996. Sometime thereafter, he applied for administrative asylum, which the Service granted during the summer of 1997.[4] Roko then filed asylum petitions on behalf of his wife and three children, who were subsequently admitted to the United States in dependent, or derivative, asylee status on October 14, 1998.

On May 16, 2001, the Service terminated Roko's asylee status, which automatically terminated his dependents' derivative status. According to the termination notice, when Roko's wife appeared for an interview at the United States Consulate to secure her entry visa, she repudiated the testimony that Roko had offered at his asylum interview.[5] The termination notice states that Roko appeared for a termination interview at the Service on March 5, 2001, and that he was unable to rebut the information provided by the Consulate.[6] The Service then issued Roko at least two Notices to

---

[4]The petitioners state that Roko's application was granted on July 26, 1997, whereas the respondent states the approval date as August 7, 1997. Nowhere does the record reveal the actual date on which Roko's asylum application was approved.

[5]The record provides no indication of the content of either Roko's testimony at his asylum interview or his wife's purported repudiation of that testimony.

[6]The substance of the information provided by the Consulate is not part of the record before this Court.

3

Appear ("NTA"): one was dated September 6, 2001, and the other, which was later withdrawn, was dated May 30, 2003.[7] The September 6, 2001 NTA issued to Roko alleges:

1.  You are not a citizen or national of the United States[;]
2.  You are a native of Yugoslavia [8] and a citizen of Yugoslavia;
3.  You were admitted to the U. S. at or near NY on or about August 13, 1996 as a non-immigrant visitor with authorization to remain until October 22, 1996;
4.  You have remained in the U.S. beyond October 22, 1996, without authorization from the Service; [and]
5.  On May 16, 2001, your administrative grant of asylum was terminated because you materially misrepresented your claim in order to procure your admission as an immigrant.

The NTA then charges that Roko is subject to removal under INA § 237(a)(1)(B) because he has remained in the United States beyond the authorized period of stay granted when he was admitted to the United States as a non-immigrant visitor. In other words, under the charge presented in the NTA, Roko is subject to removal as a non-immigrant visa overstay.

NTAs were also issued to Roko's dependents on September 6, 2001. As to each dependent, the NTAs assert:

1.  You are not a citizen or national of the United States;
2.  You are national of Yugoslavia and a citizen of Yugoslavia;

---

[7]The brief the petitioners submitted to the BIA also claims that a third NTA was issued on May 22, 2001. That claim is supported by the May16, 2001 Termination Notice, which states: "Enclosed please find a Notice to Appear (Form I-862), which places you and your dependent(s) (if any were included in your application) under removal proceedings." No copy of the May 22, 2001 appears in the record, however, and neither party has referred to it in the briefings.

[8]When the petitioners arrived in the United States, they were citizens of the Federal Republic of Yugoslavia, which changed its official name to Serbia and Montenegro in 2003. In 2006, Montenegro declared its independence. The two countries created by this split are the Republic of Serbia and the Republic of Montenegro. United States Department of State, http://www.state.gov/r/pa/ei/bgn/70949.htm; http://www.state.gov/r/pa/ei/bgn/5388.htm (last visited February 19, 2009). Whether the petitioners are now citizens of the Republic of Serbia or the Republic of Montenegro is unclear.

3. You were admitted to the United States at or near Newark, NJ on or about October 14, 1998, as a dependant asylee[;]
4. The principal applicant's asylum was terminated on May 16, 2001[;]
5. You are an immigrant not in possession of a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the Act.

The NTAs then charge that Roko's dependents are subject to removal under INA § 212(a)(7)(A)(i)(I) for unlawful entry without proper documentation. On April 17, 2002, the Service filed the NTAs with the Immigration Court, thus initiating the removal proceedings.

At a hearing on August 8, 2003, held before Immigration Judge Christian,[9] Roko admitted allegation 1, that he was not a citizen or national of the United States; admitted allegation 2, that he was a native and citizen of Yugoslavia; and admitted allegation 3, that he was admitted as a non-immigrant visitor at or near New York on or about August 13, 1996, with authorization to remain until October 22, 1996. Roko denied allegation 4, that he had remained in the United States beyond October 22, 1996, without authorization; and he denied allegation 5, that on May 16, 2001, his administrative grant of asylum was terminated because he had materially misrepresented his claim to procure his admission as an immigrant. Regarding allegation 5, Roko admitted that his grant of asylum had been terminated but denied that the termination was proper.

Immigration Judge Christian made a finding of removability;[10] set a deadline of December 31, 2003 for filing alternate forms of relief; set the matter for a November 8, 2004 hearing on the merits of Roko's asylum application, which necessarily implicated the Service's finding of fraud

---

[9]Three immigration judges appear on the record before this Court. For the purpose of clarity, this Court refers to each one by name.

[10]The immigration judge did not state the grounds for this finding, but presumably it was based upon the May 16, 2001, Termination Notice, which indicated a finding of fraud.

which had precipitated the termination notice; and set a deadline of fourteen days before the merits hearing for supplementing the asylum application. At the hearing, Immigration Judge Christian stated that Roko did not need to file a new application to proceed on the merits and indicated that he expected the Service to file a copy of Roko's previously filed asylum application with the Immigration Court.

No applications were filed by the December 31, 2003 deadline. On September 9, 2004, the Service filed a motion to deny as abandoned all applications for relief from removal because neither Roko nor his dependents had filed any further applications for relief, and the deadline established by the court had passed. By order dated September 28, 2004, Immigration Judge Elizabeth A. Hacker granted the Service's motion, stating: "Since the [petitioners] have failed to timely file the application for asylum and other forms of relief[,] it is deemed abandoned and is therefore denied."[11]

Subsequently, Immigration Judge Marsha K. Nettles ordered the petitioners removed. During the removal hearing, the petitioners' counsel repeatedly attempted to argue that his clients were being denied a full and fair hearing on the alleged finding of fraud in Roko's asylum application. Relying heavily upon Immigration Judge Hacker's earlier order deeming all forms of relief abandoned, and therefore denied, Immigration Judge Nettles refused to consider the issue of fraud, which she indicated was not before the court because there were no asylum applications to review and because the Service had not alleged fraud in its September 16, 2001 NTAs. Petitioners' counsel orally moved to set aside the order by Immigration Judge Hacker deeming all applications for relief as

---

[11]Immigration Judge Hacker's reference to the sought-after relief in the singular suggests that she understood the court to have set a deadline for filing a single application containing requests for multiple forms of relief and that failure to file applications for alternate forms of relief necessarily meant that they had abandoned the previously filed asylum application.

abandoned.[12] The Immigration Court did not specifically rule on this motion, but given the reliance Immigration Judge Nettles placed on Judge Hacker's order in the subsequent written order of removal, the motion was effectively denied.

The petitioners appealed to the BIA, arguing that the Immigration Court had erred by denying them the opportunity for a hearing on the merits of fraud and misrepresentation in the context of Roko's asylum application and by not setting aside Judge Hacker's order.[13] The BIA summarily affirmed. The petitioners now seek review of the BIA's order affirming the Immigration Court's order of removal.

## II. ANALYSIS

Because the respondent has raised jurisdictional objections to this appeal, this Court must first answer the threshold question of whether, as the respondent alleges, the petitioners have forfeited or waived the jurisdiction this Court would normally have over this case. Only if this Court has jurisdiction may it address the question of whether the petitioners' due process rights were adequately protected during the proceedings that resulted in their removal orders.

A.    Jurisdiction

The BIA had jurisdiction over the petitioners' petition for review pursuant to 8 C.F.R. § 1003.1(b)(3), which confers appellate jurisdiction over decisions of immigration judges in removal

---

[12]Counsel mistakenly referred to this order as being dated February 27, 2004, which is the date upon which a visiting immigration judge granted the motion by the petitioners' prior counsel to withdraw. However, the context of his exchange with Immigration Judge Nettles indicates that he intended to refer to the September 28, 2004 order.

[13]They also argued that the Immigration Court had improperly denied Vera Juncaj's motion for a continuance based upon her status as an aged-out dependent and based upon her bona fide marriage to a United States citizen. As discussed below, the petitioners do not renew this argument in their appeal before this Court, and therefore, this Court does not consider it.

proceedings. This Court's jurisdiction is predicated upon 8 U.S.C. § 1252(a), which gives the Court of Appeals exclusive jurisdiction to review final orders of removal. The petitioners' petition for review by this Court was timely filed within thirty days of the BIA's order. INA § 242(b), 8 U.S.C. § 1252(b)(1). Venue properly lies in this Court because the proceedings before the Immigration Court were completed in Detroit, Michigan, within this judicial circuit. 8 U.S.C. § 1252(b)(2). Assuming the issues that petitioners raise on appeal were properly preserved below and properly presented to this Court in their proof brief, then this Court has jurisdiction.

The jurisdictional question this Court must address, then, is whether the petitioners have preserved for appeal the issues they now seek to present to this Court. A petitioner's failure to raise an issue before the BIA deprives this Court of jurisdiction to consider the issue. 8 U.S.C. § 1252(2)(1); *Suassuna v. I.N.S.*, 342 F.3d 578, 583 (6th Cir. 2003). Further, this Court may consider waived any arguments not presented in an appellant's brief. *See* Fed R. App. P. 28(a)(8), (9); *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("We normally decline to consider issues not raised in the appellant's opening brief.") (citing *Wright v. Holbrook*, 794 F.2d 1152 (6th Cir. 1986)) .

The respondent contends that this Court lacks jurisdiction for three reasons. First, according to the respondent, the petitioners argue to this Court "that the immigration judge violated their due process by not permitting Roko to renew his asylum application[,]"an argument which the petitioners failed to raise before the BIA. However accurate the respondent's assertion that the petitioners failed to raise this claim before the BIA may be, the respondent mischaracterizes the petitioners' argument before this Court. The grounds upon which the petitioners rely--that Roko did not need to file a new application, that he was denied a hearing on the merits and accompanying fraud allegations, and that

8

the Immigration Court's order deeming all forms of relief abandoned should be put aside--are issues which the petitioners did argue to the BIA and which they raise on this appeal. Consequently, this contention by the respondent lacks merit.

Second, the respondent observes that the petitioners have waived any challenge to the immigration judge's denial of Vera Juncaj's motion for a continuance on the basis of her status as an aged-out dependent and her marriage to a United States citizen. This issue was properly raised by the petitioners in their arguments to the BIA, but the petitioners have not renewed it in their arguments to this Court, and they do not counter the respondent's assertion that this issue was not raised in their appellate brief. Accordingly, this issue has been waived.

Finally, the respondent argues that the petitioners have waived any appellate claim that their due process rights were violated by the Immigration Court's failure to provide a merits hearing on the asylum application and related allegations of fraud because they failed to raise that issue in their opening brief before this Court. Taken as a whole, the petitioner's brief clearly raises the due process issue as it relates to the Immigration Court's denial of Roko's right to a hearing on the merits of his previously filed asylum application and the Service's allegations of fraud underlying the termination of his asylum. Accordingly, the respondent's jurisdictional challenge on this ground is without basis.

B.    The Petitioners' Due Process Claims

Having determined that jurisdiction properly lies in this Court, we now turn to the merits of the petitioners' appeal. When the BIA adopts the Immigration Court's decision without comment, this Court reviews the Immigration Court's decision as the final administrative order. *Hasan v.*

9

*Ashcroft*, 397 F.3d 417 (6th Cir. 2005). This Court reviews a due process challenge de novo. *Huicochea-Gomez v. I.N.S.*, 237 F.3d 696, 699 (6th Cir. 1996).

The petitioners contend that the Immigration Court denied their right to due process when it ordered them removed without holding a hearing on the merits of Roko's asylum application, which had been previously filed by Roko, which had been administratively approved by the Service, which was later determined by the Service to be fraudulent, and which was recognized by the court during an earlier stage of removal proceedings as having been renewed even though copies had not yet been filed with the court. The respondent, relying exclusively upon its jurisdictional objections, has presented no arguments on the merits of the petitioners' claims.

1. *Protections of Due Process in Asylum Proceedings*

Once an alien is placed in removal proceedings and either seeks review of a previously approved asylum application or files a new application, the alien is afforded the full complement of procedural protections that attend such proceedings. *See generally* 8 C.F.R. § 1208.2. An alien in removal hearings is entitled to the Fifth Amendment guarantee of due process. *Luca v. Mukasey*, 259 F.App'x 701, 707 (6th Cir. 2007) (citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citations omitted). Due process in removal hearings therefore includes a full and fair hearing. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). A full and fair hearing requires that an alien have "a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the government." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 391 (6th Cir. 1998). At such hearings, an Immigration Court should avoid "excessive

10

deference to the government or a shallow evaluation of the evidence . . . ." *Alexandrov v. Gonzales*, 442 F.3d 395, 405 (6th Cir. 2006). "A due process violation occurs . . . when the proceeding is 'so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Zayed v. Gonzales*, 139 F.App'x 689, 693 (6th Cir. 2005) (quoting *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000)).

On appeal, the petitioners argue that their due process rights to a hearing on the merits were violated. They contend that they were not required to file new applications for asylum to retain their right to a full and fair hearing on the Service's purported finding of fraud in Roko's original application. They further argue that any dates established by the Immigration Court at the August 8, 2003 hearing applied only to applications for alternate forms of relief; that the Service was directed by the Immigration Court to file a copy of Roko's original application for the record; and that the Service failed to comply. For these reasons, the petitioners claim, the later order deeming all forms of relief abandoned, and therefore denied, was issued in error and should be set aside to allow a hearing on the merits of the originally filed application. The record supports the petitioners' assertions that the Immigration Court failed to protect the petitioners' due process guarantees.

2.      *The Petitioners' Removal Proceedings*

Important background for this case begins with the Service's terminating Roko's asylum, which automatically terminated the asylee status of his dependent beneficiaries. Because the asylum was administratively terminated, any allegations of fraud were not subject to proof by a preponderance of evidence in front of a neutral judge. Absent an opportunity to challenge the finding of fraud in Immigration Court, Roko's removal was a foregone conclusion because his legal

11

status as a non-immigrant had expired, and his permission to remain in the United States afterward depended entirely upon the grant of asylum.

To ensure that he and his dependants retained their due process right to a full and fair hearing at a meaningful time and in a meaningful manner before a neutral tribunal, Roko indicated that he wanted a hearing on the merits of his asylum application. At the hearing before Immigration Judge Christian on August 8, 2003, the Immigration Court unambiguously indicated that Roko did not need to file a new asylum application to have a hearing on the merits. Nevertheless, the petitioners were never given the opportunity to be heard. In an order containing substantive inaccuracies and omissions, the Immigration Court erred by granting the motion by the Service to deem abandoned all forms of relief. For example, according to the order, all of the petitioners admitted that they were not United States citizens or nationals, that they were citizens and natives of Yugoslavia, and that they had remained longer than permitted as non-immigrants. These statements are incorrect. First, the allegations in the NTAs issued to the dependents differ materially from those in the NTA issued to Roko. Unlike Roko, who did enter the United States as a non-immigrant visitor, his wife and children were admitted in immigrant status as dependent asylees. Second, only Roko entered admissions and denials of the allegations at the August 8, 2003 hearing. The dependants entered no admissions or denials, and there were no findings as to them. Finally and most importantly, the order misstates precisely what Roko admitted. Although he admitted allegation 3, that he was admitted to the United States in non-immigrant status with authorization to remain in that status until October 22, 1996, he denied allegation 4, that he had remained beyond that date without authorization.

Additionally, the order fails to mention that at the August 8, 2003 hearing, Roko denied that the asylum should have been terminated in the first place without a showing of fraud. It similarly

12

fails to mention that Immigration Judge Christian had set the matter for a hearing on the merits on the basis of Roko's previously filed application and had indicated that the Service would file a copy of the application with the court. In the same vein, the order seems to misconstrue the nature of the December 31, 2003 deadline as a requirement that the petitioners file new applications for asylum rather than as a deadline for filing any additional applications for alternate forms of relief.

The Immigration Court erred by deeming abandoned, and therefore denied, *all* forms of relief--rather than denying only those alternate forms of relief requiring the filing of additional applications--when it failed to recognize that Immigration Judge Christian (1) had informed the petitioners that they were not required to file new applications for asylum to proceed with a hearing on the merits; and (2) had indicated that he expected the Service to file the necessary copy with the court. Compounding the error, the Immigration Court then relied upon the order (and the purported findings therein) which had deemed all forms of relief abandoned to order the petitioners removed without first holding a hearing on the merits. These errors rendered the petitioners' removal proceedings so fundamentally unfair that the petitioners were prevented from reasonably presenting their case. They had no opportunity to examine the evidence against them, to present evidence on their own behalf, or to cross-examine any witness the Service might have presented. Accordingly, this Court finds that they were denied due process during their removal proceedings. Based upon the foregoing, remand is required.

### III. CONCLUSION

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision and the Immigration Court's September 28, 2004 order finding all forms of relief abandoned--to the extent that it applies to the previously filed asylum application--are VACATED, and this action is

13

REMANDED to the BIA with instructions to remand to the Immigration Court for further proceedings consistent with this opinion.

After the notice of appeal was filed, the petitioners were detained by the Service pending removal. The petitioners obtained a stay of removal from this Court and have filed a motion for release pending review of this appeal. Having vacated the BIA's decision ordering the petitioners removed, this Court VACATES the stay of removal as moot. Further, assuming without deciding that this Court has jurisdiction with regard to the petitioners' motion to release from custody pending this Court's review, that motion is DENIED as moot.